ELDORA PRINCE, and
NGCOBA ATKINS,

                                        Plaintiffs,

             v.                                        6:16-CV-509
                                                       (LEK/ATB)

UTICA CITY SCHOOL DISTRICT,
et al.,

                                        Defendants.

ELDORA PRINCE, Plaintiff pro se
NGCOBA ATKINS, Plaintiff, pro se

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court a complaint, filed on a form for civil rights

actions pursuant to 42 U.S.C. § 1983, together with an application to proceed in forma

pauperis ("IFP"), filed by pro se plaintiffs Eldora Prince and Ngcoba Atkins.[1] (Dkt.

Nos. 1, 2).

I.    **IFP Application**

Plaintiffs appear to be a married couple. They have again filed only one

application for IFP status. Technically, each plaintiff should have completed his or her

own form because they are separate plaintiffs for this action.[2] However, because they

---

[1] The court notes that this is the second section 1983 complaint that plaintiffs have filed in the last month. In their previous complaint, they sued the Oneida County Department of Social Services and various of its employees for alleged due process, equal protection, ADA and Rehabilitation Act violations. *See Atkins & Prince v. Oneida County DSS*, et al., 6:16-CV-440 (DHN/ATB).

[2] It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself or herself. *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654. An limited exception exists if an individual appears for an estate in which there

have each signed the application individually, the court will continue to excuse the technical error. A review of the IFP applications shows that the plaintiffs are not able to afford to pay the filing fee. Thus, the court will assume for purposes of this Order and Report-Recommendation that, together, and separately, plaintiffs meet the financial criteria for IFP.

In addition to determining whether plaintiffs meet the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.

---

are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case.

*Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require "detailed factual allegations," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Spring v. Allegany Limestone Cent. Sch. Dist.*, No. 14-CV-476, __ F. Supp. 3d __, 2015 WL 5793600, at *3 (W.D.N.Y. Sept. 30, 2015) (citing *Bell Atl. Corp.*, 550 U.S. at 555) (citation omitted)). A pleading which offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Naked assertions, devoid of "further factual enhancement" are insufficient. *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 557). This court will now turn to a consideration of the plaintiffs' complaint under the above standards.

## II.  <u>Complaint</u>

Plaintiffs' complaint is vague, but the court will attempt to determine whether it

states a claim for relief. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein). Plaintiffs are suing the Utica City School District ("UCSD"), UCSD Superintendent, Bruce Karam, UCSD Assistant Superintendent, Lori Eccleston, and Mary Belden,[3] the Principal of one of the Utica City Schools.[4] (Complaint ("Compl.") at ¶ 3(a)-(c)).

Plaintiffs begin by stating that on December 14, 2011, a disciplinary referral was placed in the "student's"[5] file, but after a meeting with defendant Eccleston, the Assistant Superintendent of the UCSD, the referral was removed because "it should never have been issued." (Compl. ¶ 4(a)).

Plaintiffs then allege that on September 24, 2013, "the child" was diagnosed with "ADHD,"[6] and that although plaintiffs attempted to work with the Conkling School staff, they received "minimum cooperation." (Compl. ¶ 4(b)). Plaintiffs allege that the "teacher" was not willing to be an active participant in setting up a program for ADHD

---

[3] In the paragraph of the complaint which lists the defendants, plaintiffs have spelled this defendant's name "Belden." (Compl. ¶ 3(b)). However, throughout the complaint they refer to this individual spelling her name both "Belden" (Compl. ¶ 4(e)) and "Belding" (Compl. ¶¶ 4(d), 4(h), 4(i)). The court will refer to this defendant with the name as it is listed in paragraph 3    Belden.

[4] In one paragraph of the complaint, plaintiffs mention the "Conkling School." The court assumes that defendant Belden is the principal of the Conkling School, but plaintiffs never make that connection, and they mention that they had a meeting at "Proctor High School." (Compl. ¶¶ 4(b), 4(j)). The specific school at which defendant Belden is the principal does not affect the result of this recommendation.

[5] The court assumes that the "student" refers to plaintiffs' child.

[6] The court assumes that plaintiffs' reference to ADHD means "Attention Deficit Hyperactivity Disorder."

and Autism.[7]  Plaintiffs state that they requested "evaluation for 504 program"[8] in May of 2014, but UCSD did not respond. (*Id.*)

Plaintiffs allege that on November 17, 2014, there was a "bullying incident" at lunch, involving their child. (Compl. ¶ 4(c)).  Plaintiffs met with defendant Belden on November 18, 2014 to "address child safety and lack of monitors." (*Id.*)  Plaintiffs state that they also asked defendant Belden to "begin 504 evaluation process."[9]  Plaintiffs state that on April 10, 2015, the child was assaulted by another student, and the police were called "to report the incident." (Compl. ¶ 4(d)).  Plaintiffs had another meeting with defendant Belden to address the bullying and the "failure to initiate [the] 504 process." (*Id.*)

On June 17, 2015, plaintiffs' child received a "referral for alleged insubordination." (Compl. ¶ 4(e)).  After another meeting with defendant Belden on June 23, 2015, it was determined that "'the ball was dropped' by staff again," and it was determined that the referral should never have been issued. (*Id.*)  Plaintiffs also

---

[7] It is unclear when the child was diagnosed with Autism.  Plaintiffs specify the ADHD diagnosis, but then include Autism in the same paragraph, without a similar statement of when the impairment was diagnosed.

[8] The court can only assume that plaintiffs are referring to Section 504 of the Rehabilitation Act ("RA") or ("section 504"), 29 U.S.C. § 794 because the RA is applicable to disabled students. *See C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840-41 (2d Cir. 2014) (discussing standard for student claims under the RA).  The court will refer to the RA and section 504 interchangeably because plaintiffs also use these references.

[9] The court notes that the rest of the paragraph does not seem to have any relation to plaintiffs' claims, but the court will mention it in the interest of discussing the facts completely.  Plaintiffs allege that at the November 18, 2014 meeting with defendant Belden, they also mentioned that they had no interest in attending a "Parent Teacher Conference" because "Mrs. Colon" did not "communicate" with plaintiffs at the last conference, and there was "also an issue on 11/17/14 with picking up [the child] early for [an] appointment."  Apparently the "teacher" would not release the child. (Compl. ¶ 4(c)).

"questioned" why UCSD was "not willing to speak with emergency contacts on initiating 504." (*Id.*) Plaintiffs state that the child's aunt and grandmother were "on the list and able to speak with staff." (*Id.*) On June 29, 2015, after meeting with defendant Eccleston, the "referral" was removed because it "should have never been issued." (Compl. ¶ 4(f)). Plaintiffs allege that, at the June 29, 2015 meeting, they also discussed "bullying, racial discrimination, emergency contacts, and 504 plan evaluation." (*Id.*)

Another meeting was held on October 5, 2015 at "UCSD to determine 504 eligibility and program initiation."[10] (Compl. ¶ 4(g)). In December of 2015, plaintiffs' child was involved in a fight with another student "who was bullying." (Compl. ¶ 4(h)). Plaintiffs state that the fight occurred on the last day of school before the Christmas holiday. (*Id.*) Plaintiffs state that a week after the students returned to school, plaintiffs left "a note" for defendant Belden, and although she called plaintiffs on January 12, 2016, she stated that she did not realize that plaintiffs' child had been involved in this particular fight.[11]

Plaintiffs allege that on March 2, 2016, several children "jumped" plaintiffs' child. (Compl. ¶ 4(i)). Although the child called home and told plaintiffs that he started the fight, plaintiffs told defendant Belden in the subsequent meeting, that they thought the child had been "coached" to say that he started the altercation. (*Id.*) Plaintiffs state that after "discussion," it was determined that plaintiffs' child did not "actually" start

---

[10] Plaintiffs do not state who participated in the October 5, 2015 meeting.

[11] This is the court's interpretation of plaintiffs' language. The sentence actually reads: "she returned call on 1/12/16 and she had not even realized it was N.P. the second student involved in incident reported that day." (Compl. ¶ 4(h)).

the fight, "but there was an accident that occurred followed by a reaction by another student and N.P. hit back in defense." No "referral" was issued as a result.

On March 31, 2016, plaintiffs had a meeting with Walter Savage from the UCSD to discuss "ongoing issues with UCSD non compliance with agreed 504 plan, bullying incidents, and apparent lack of supervision." (Compl. ¶ 4(j)). Plaintiffs claim that on April 8, 2016, there was another "incident" at school in which the "principal" and a teacher attempted to "fabricate" a referral, claiming that plaintiffs' child was harassing students in the back of the class. (Compl. ¶ 4(k)). However, plaintiffs' child was simply asking for help, which the other students refused to give. Plaintiffs claim that the teacher wrote the referral when plaintiff was not even in the classroom, and when N.P. told the teacher that he was innocent of the alleged misbehavior, the teacher began to yell "liar" at N.P. "until his face turned red."[12] (*Id.*) However, plaintiffs state that a meeting with the "Principal" resulted in the requested "change of teacher." (Compl. ¶ 4 (l)). Finally, plaintiffs state that the "Principal" has requested that their child be placed in the "'Positive Prevention Program.'" (Compl. ¶ 4(m)).

The complaint contains three "Causes of Action." (Compl. ¶ 5). The first cause of action states that plaintiffs are seeking damages for a violation of their due process rights. (*Id.* – First Cause of Action). Plaintiffs state that they were not given due process "before being deprived of liberty interest [sic] in our good name and reputation

---

[12] Because it is clear that plaintiffs were not present during this incident, and plaintiff's child is not a plaintiff, these facts are not personally known to the plaintiffs.

and continued safe enrollment in quality public education."[13] (*Id.*)  The second cause of action alleges that UCSD violated the provisions of the RA based on a "pattern and practice of discriminatory and retaliatory acts and omissions." (*Id.* – Second Cause of Action).  As a basis for this claim, plaintiffs state that plaintiff Prince and "child N.P." were "disabled," and "further alleges [sic] that her request for reasonable accommodations [sic] constitutes protected activity under the act." (*Id.*)  The plaintiffs' third cause of action claims that UCSD violated the Americans with Disabilities Act ("ADA"), and "504" by "delaying [the] evaluation process to set up independent learning program for [a] child with ADHD, as well as failing to abide by provisions set forth in established and agreed upon 504 plan." (*Id.* Third Cause of Action).

Plaintiffs seek substantial monetary relief. (Compl. ¶ 6).  Plaintiffs request $210,000 "for [a] pattern and practice of racial discrimination, failure to prevent bullying, unreasonable punishment, injuries and trauma resultant [sic] of described actions, [sic] violation of ADA and 504, and official misconduct." (*Id.*)

I. **Exhaustion**

A. **Legal Standards**

If plaintiffs were bringing claims under the IDEA, they would be required to exhaust their administrative remedies prior to bringing a federal law suit. *See Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (only after

---

[13] Plaintiffs may be attempting to allege the denial of a "Free Appropriate Public Education" ("FAPE").  This term is often used with the Disabilities Education Improvement Act, ("IDEA"), 20 U.S.C. § 1400 et seq. *See Scarsdale Union Free Sch. Dist. v. R.C.*, No. 12-CV-1227, 2013 WL 563377, at *1 (S.D.N.Y. Feb. 4, 2013).  However, as stated below, plaintiffs do not allege any specific due process claims, relating to the child's education and are not making any claims under the IDEA.

exhaustion of the IDEA administrative procedures has an aggrieved party the right to file a suit in federal or state court) (citing 20 U.S.C. § 1415(i)(2)(A)). However, the Second Circuit has also held that the exhaustion requirement applies to suits under the ADA or under section 504, to the extent that they seek relief that is also available under the IDEA. Id. at 246 (quoting 20 U.S.C. § 1415(l). The same applies to cases brought under section 1983. *See Hope v. Cortines*, 872 F. Supp. 14, 19-20 (E.D.N.Y. 1995).

It appears clear from the facts stated in the complaint that plaintiffs did not exhaust their administrative remedies with respect to the issues regarding their child. The issue then becomes whether plaintiffs' individual claims could have been addressed within the framework of the IDEA. *Baldessarre v. Monroe Woodbury Cent. Sch. Dist.*, 820 F. Supp. 490, 505-508 (S.D.N.Y. 2011). The court notes that there are exceptions to the exhaustion rule. *See M.A. v. New York Dep't of Educ.*, 1 F. Supp. 3d 125, 130 (S.D.N.Y. 2014) (quoting *Murphy v. Arlington Cent. Sch. Dist.*, 297 F.3d 195, 199 (2d Cir. 2002) (listing exceptions, including futility). However, rather than engage in a lengthy discussion of whether any exception to the exhaustion requirement applies in this action, this court will continue to analyze plaintiffs' claims, particularly because the claims may be dismissed on alternate grounds.

## II.  **Personal Involvement**

### A.  **Legal Standards**

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). A supervisory official is personally involved

if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit). This court finds that even if the *Colon* factors are considered, and are all still viable, plaintiff has not alleged the requisite personal involvement of defendant Bruce

Karam, the Superintendent of UCSD.

## B. Application

### 1. Bruce Karam

Plaintiffs have named Bruce Karam as a defendant in the paragraph of the complaint that requires them to list all defendants. (Compl. ¶ 3(a)). However, defendant Karam is not mentioned anywhere else in the complaint. There is no indication that he was involved in, or was even aware of, the incidents described by the plaintiffs. There are absolutely no facts stated as to defendant Karam. Thus, the complaint may be dismissed as against defendant Karam under section 1983 for lack of personal involvement and in addition to the lack of merit in plaintiffs' claims as discussed below.

### 2. Lori Eccleston

There are only two paragraphs of the factual recitation in which even the assistant superintendent, defendant Eccleston is mentioned. (Compl. ¶¶ 4(a), 4(f)). Plaintiffs allege only that defendant Eccleston "removed" a disciplinary referral in 2011 because it should never have been issued, and removed another "referral" in June of 2015 after meeting with plaintiffs. (Compl. ¶¶ 4(a), 4(f)). Although plaintiffs claim that the 2015 meeting included a "discussion" of various issues such as "bullying, racial discrimination, emergency contacts, and 504 plan evaluation," they do not allege that defendant Eccleston committed any violations as a result of that meeting. However, because plaintiffs do allege that they had at least some contact with defendant Eccleston, and she participated in a conversation about some of plaintiffs' issues, the

11

court will find sufficient allegations of "personal involvement" to withstand initial review, particularly because the complaint may be dismissed for other reasons, notwithstanding defendant Eccleston's alleged involvement. The court will discuss the merits of plaintiffs' claims below.

## III.  Defamation

### A.  Legal Standards

It is well-settled that damage to one's reputation does not rise to the level of a constitutional violation. *Lawson v. County*, No. 3:14-CV-195, 2016 WL 427896, at *7 (N.D.N.Y. Feb. 3, 2016) (citing *Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 3-4 (2d Cir. 2013)). "'Mere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment, even when it causes serious impairments of one's future employment.'" *Id.* (quoting *Hojnacki v. Klein Acosta*, 285 F.3d 544, 548 (7th Cir. 2002)). Only when there is such an "alteration of legal status" together with the injury resulting from the defamation is a liberty interest affected, justifying procedural safeguards. *Id.* (citing *Paul*, 424 U.S. at 708-709).

### B.  Application

In this case, plaintiffs have cited absolutely no facts related to defamation. In their first cause of action, they claim that defendants made "false and stigmatizing" statements, but the entire complaint refers to incidents involving their child and their attempts at obtaining an evaluation for their child under section 504. There are no claims of "false or stigmatizing" statements made about the plaintiffs by anyone. There

is no indication that any defendant was involved in any way in statements or actions that would have damaged plaintiffs reputations or "good name." Plaintiffs have not alleged even "mere" defamation, let alone any defamation plus "alteration of legal status" which would be required to rise to the level of a constitutional violation. These statements amount only to "labels" and "conclusions" without further support. Thus, to the extent that plaintiffs' first cause of action alleges defamation under section 1983, it may be dismissed with prejudice for failure to state a claim.[14]

## IV. Equal Protection

### A. Legal Standards

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To state a race-based or disability-based Equal Protection violation, plaintiffs must allege that a government actor intentionally discriminated against plaintiffs on the basis of their race or their disability. *See Brown v. City of Oneonta*, 221 F.3d 329, 336-37 (2d Cir. 1999) (race-based claim); *A.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.*, 840 F. Supp. 2d 660, 688 (E.D.N.Y. 2012) (disability and race claims).

### B. Application

Plaintiffs have not alleged that any of the defendants discriminated against them because of their disabilities or their race. They have not even revealed what their race

---

[14] Plaintiffs first cause of action also includes claims for "continued safe enrollment in quality public education" and "racial discrimination" which the court will discuss separately.

or races are.  They have not alleged that anyone who was similarly situated was treated any differently than they were.  One of the paragraphs of the complaint states that plaintiffs discussed "bullying, racial discrimination, emergency contacts, and 504 plan evaluation" in a meeting with defendant Eccleston,[15] but these conclusory statements are insufficient to state a claim of any basis for discrimination.  Thus, plaintiffs have failed to state an Equal Protection claim.

## V.     ADA/RA

### A.     Legal Standards

In order to state a claim under section 504 of the Rehabilitation Act, the plaintiffs must show that they (1) have a disability for purposes of the Act; (2) that they were "otherwise qualified" for a benefit that they were denied; (3) that they were denied the benefit solely because of their disabilities; and (4) that the benefit is part of a program or activity that receives federal financial assistance. *Romano v. SLS Residential, Inc.* 246 F.R.D. 432, 440 (S.D.N.Y. 2007). Under Title II of the ADA, the plaintiffs must establish that they (1) are qualified individuals with a disability(ies); (2) the defendant is subject to the ADA; and (3) plaintiffs were denied the opportunity to either participate in, or to benefit from the defendants' services, programs, or activities or were otherwise discriminated against because of plaintiffs' disabilities. *United Spinal Ass'n v. Bd. of Elections in City of New York*, 882 F. Supp. 2d 615, 623 (S.D.N.Y. 2012) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).  Because the ADA and Section 504 impose "nearly identical" requirements, courts consider the

---

[15] (Compl. ¶ 4(f)).

merits of these claims together. *See Disabled in Action v. N.Y.C. Bd. of Elections*, 752 F.3d 189, 196 (2d Cir. 2014).

In addition, ADA retaliation claims are governed by Title V of the ADA which provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 28 U.S.C. § 12203(a). It is also unlawful to interfere, coerce, intimidate, threaten, or interfere with any individual in the exercise of his or her rights under the act. 42 U.S.C. § 12203(b). To state a claim for retaliation under the ADA, a plaintiff must show that she engaged in a protected activity under the ADA, the defendants were aware of the activity, the defendants took adverse action against plaintiff, and there was a causal connection between the protected activity and the alleged adverse action. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

**B.    Application**

**1.    Second Cause of Action**

Plaintiffs allege that the UCSD violated the ADA and the RA "by their pattern and practice of discriminatory acts and retaliatory acts and omissions." (Compl. ¶ 5 – Second Cause of Action). Plaintiffs allege that plaintiff Prince and her child were disabled within the meaning of the act and that plaintiff Prince's "request for accommodations constitutes protected activity under the act."

The court would first point out that there is no discussion anywhere in the

complaint about plaintiff Prince's disabilities[16] or any allegation that plaintiff Prince asked for reasonable accommodations for herself.  However, although plaintiffs do not articulate this claim specifically, it has been held that advocacy on behalf of a disabled student is "protected activity" for purposes of Section 504 and the ADA. *J.R. v. New York City Dep't of Educ.*, No. 14 Civ. 392, 2015 WL 5007918, at *5 (E.D.N.Y. Aug. 20, 2015) (citing *Stahura Uhi v. Iroquois Cent. Sch. Dist.*, 836 F. Supp. 2d 132, 143-44 (E.D.N.Y. 2011)).  The statement that plaintiff Prince asked for "reasonable accommodations" could be interpreted as a request for "reasonable accommodations" for her son – in other words – her protected activity was "advocacy" on behalf of her son.  This court will interpret the complaint in this manner because it is the "strongest" argument that the complaint "suggests" and finds that plaintiffs do allege that they engaged in protected activity.

Even though the court can liberally interpret plaintiffs' complaint as alleging that their "complaints" to the school about bullying and other issues constitute protected activity under the ADA or the RA, they allege no adverse action taken against them as a result of these complaints.[17]  Although plaintiffs claim that their requests were not fulfilled promptly, there is no indication that defendants or any one defendant took any

---

[16] The court notes that in this action, plaintiff Prince has not stated what her disabilities are. Plaintiffs' other action mentions those alleged disabilities.

[17] The court does note that complaints of "bullying" without more, are insufficient to establish protected activity under the ADA or section 504. *Spring v. Allegany-Limestone Cent. Sch. Dist.*, No. 14-CV-476, 2015 WL 5793600, at *12 (W.D.N.Y. Sept. 30, 2015) (citing *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 233-34 (E.D.N.Y. 2015).  The court will assume for purposes of this recommendation that plaintiffs argued that the bullying in question was related to the disability.  However, they do not specify that this was the case.

action against them for complaining about the issues.[18]  Thus, any claim for retaliation may be dismissed.

### 2. Third Cause of Action and Claims Purporting to Relate to Plaintiffs' Child

As stated above, this action is really about plaintiffs' child and plaintiffs' claim that their child was not properly or promptly evaluated for section 504 purposes by UCSD and its employees, particularly the principal of his school.  Plaintiffs' third cause of action states that UCSD violated the ADA and section 504 "by delaying [the] evaluation process to set up [an] independent learning program for [a] child with ADHD, as well as failing to abide by provisions set forth in agreed upon 504 plan." (Compl. ¶ 5 – Third Cause of Action).

Plaintiffs' son is not a plaintiff in this action.  As stated above, a person who has not been admitted to practice law may not represent anyone's interest but his or her own. *Lattanzio v. COMTA*, 481 F.3d at 139-40.  Although not an "exception" to this rule, the Supreme Court held that the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 et seq. grants parents independent rights in the entitlements created by the IDEA. *Winkelman ex rel. Winkelman v. Parma City School Dist.*, 550 U.S. 516 (2007).  Thus, pro se parents may sue under the IDEA based on their own entitlement, even though they are also indirectly asserting their child's rights. *Id.*  The Supreme

---

[18] To the extent that it can be interpreted that any alleged delay was adverse action, it was not "sufficiently adverse" because it was not harmful to the point that it would have dissuaded an individual of ordinary firmness from engaging in the protected activity. *J.R. v. New York City Dept. of Educ.*, 2015 WL 5007918 at *5 (quoting *M.A. v. New York Dep't of Educ.*, 1 F. Supp. 3d 125, 149-50 (S.D.N.Y. 2014)).  In addition, although not dispositive, these plaintiffs were not deterred and continued to advocate for their child.

Court did not hold that parents may represent their children's interests, only that parents may be "aggrieved parties" under the IDEA because they too have an interest in their child obtaining a proper education. *Id.* at 531-32.

These plaintiffs are not suing under the IDEA,[19] they are suing under section 1983, the ADA, and the RA. Federal courts in New York have extended *Winkelman* to cases brought under both the ADA and section 504.[20] *J.R. v. New York City Dep't of Educ.*, 2015 WL 5007918, at *4 (citing *A.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.*, 840 F. Supp. 2d at 675; *B.D.S. v. Southold Union Free Sch. Dist.*, Nos. CV-08-1319, CV-08-1864, 2009 WL 1875942, at *14-15 (E.D.N.Y. June 24, 2009)). The court in *J.R. v. New York City Dep't of Educ.* specifically held that because the parents have "'a particular and personal interest in preventing discrimination against [their disabled] child'" they "have standing to assert claims for violations related to their child's education." *Id.*

Even assuming that plaintiffs are asserting their own rights in their son's education, plaintiffs have failed to allege under the ADA or section 504, that their son was denied participation in any program due to his disability. Plaintiffs state several times that the defendants delayed in beginning the "504 evaluation process," but then

---

[19] Section 504 is broader in certain respects to the IDEA, and a student could qualify for accommodations under section 504 and yet not be entitled to special education services under the IDEA. *Scarsdale Union Free Sch. Dist. v. R.C. ex rel. R.C.*, No. 12-CV-1227, 2013 WL 563377, at *2 n.1 (S.D.N.Y. Feb. 4, 2013) (citation omitted).

[20] Some courts have refused to extend *Winkelman* to these other statues. *See e.g. D.N. v. Louisa County Public Schools*, No. 3:15-CV-45, 2016 WL 183926, at *4 (W.D. Va. Jan. 13, 2016) (refusing to extend *Winkelman* to section 504 claims on behalf of disabled child).

state in their third cause of action states that defendants failed to abide by "the provisions set forth in [the] established and agreed upon 504 plan." This statement indicates that plaintiffs' son was evaluated as they requested. Thus, at worst, the defendants delayed in evaluating plaintiffs' son and then apparently did not properly implement the "plan." Plaintiffs do not state what plan was developed, when it was developed, and how the defendants failed to implement it.[21] However, the last two paragraphs of the complaint state that a meeting with "Principal" resulting in a requested teacher change, and that the "Principal" has requested that the child be placed in a "Positive Prevention Program." (Compl. ¶¶ 4(l), 4(m)).

In order to show a violation under section 504 in the context of providing education to a child with disabilities, the plaintiffs must show that the school district "'acted with bad faith or gross misjudgment.'" *Y.D. v. New York City Dep't of* Educ., No. 2016 WL 698139, at *6 (S.D.N.Y. Feb. 19, 106) (quoting *Wenger v. Canastota Cent. School Dist.*, 979 F. Supp. 147, 152 (S.D.N.Y. 1997) (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)); *C.L. v. Scarsdale Union Free School*

---

[21] Section 504 is governed by 34 C.F.R. § 104.00 et seq. The regulations provide for evaluation and placement of the child. *Id.* § 104.35. *See J.D. ex rel. J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 63-64 (2d Cir. 2000) (discussing section 504 evaluation). The regulations also require the "recipient that operates a public elementary or secondary education program or activity" provide procedural safeguards, including - inter alia - notice and an opportunity for the child's parents or guardian to examine relevant records, an impartial hearing, and a review procedure. *Id.* The regulation also states that compliance with the IDEA procedural safeguards is one means of meeting this requirement. *Id.* The IDEA procedural safeguards also require the educational agency to provide parents an opportunity to present complaints regarding the identification, evaluation, or educational placement of a child with a qualifying disability, including providing the right to an impartial hearing. *Id.* at 68-69 (discussing the due process procedures under the IDEA) (citing inter alia 20 U.S.C. § 1415 (entitled "Procedural Safeguards), 34 C.F.R. §§ 300.506(a)-(b)). *See also* 34 C.F.R. §§ 300.500 et seq (entitled Due Process Procedures for Parents and Children).

*Dist.*, 744 F.3d 826 (2d Cir. 2014) ("evidence of bad faith or deliberate indifference [is] required to establish a Rehabilitation Act claim."); *Maus v. Wappingers Cent. Sch. Dist.*, 688 F. Supp. 2d 282, 301 (S.D.N.Y. 2010) (citing *Pinn v. Harrison Cent. Sch. Dist.*, 473 F. Supp. 2d 477, 483 (S.D.N.Y. 2007); *S.W. ex rel. J.W. v. Warren*, 528 F. Supp. 2d 282, 290 (S.D.N.Y. 2007)).

There is absolutely no factual basis stated in the complaint that would rise to the level of an allegation of bad faith or gross misjudgment. Thus, to the extent that plaintiffs may bring an action to vindicate their own interests in their child's education, the complaint may be dismissed.

## XII. <u>Opportunity to Amend</u>

### A. **Legal Standards**

Generally, before the court dismisses a pro se complaint or any part of the complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. **Application**

The court finds that it would be futile to attempt to raise any defamation claims based on the factual statements in plaintiffs' complaint and thus, will recommend that plaintiffs' section 1983 claims for defamation be dismissed with prejudice. With

respect to the rest of plaintiff's claims, although it appears unlikely that plaintiffs will be able to state claims, the court will still recommend dismissal without prejudice to plaintiffs filing an amended complaint that properly asserts claims as discussed above. Thus, if the court approves this recommendation, plaintiffs may be given an appropriate amount of time to file an amended complaint that the court may return to me for review.

**WHEREFORE**, based on the findings above it is,

**ORDERED**, that plaintiffs' motion for IFP status is **GRANTED FOR FILING PURPOSES**, and it is

**RECOMMENDED**, that plaintiffs' complaint be dismissed in its entirety **WITH PREJUDICE**, as to any section 1983 claims based on **DUE PROCESS and DEFAMATION,** and it is

**RECOMMENDED**, that the remainder of the complaint be dismissed **WITHOUT PREJUDICE**, and it is

**RECOMMENDED**, that if the district court approves this recommendation, plaintiffs be given sixty (60) days within which to amend their complaint as to only the claims that are dismissed without prejudice, against the proper defendants, and it is

**RECOMMENDED**, that if the court approves this recommendation, and plaintiffs fail to file an amended complaint within the appropriate time or request an extension of time to do so, the entire action be dismissed with prejudice, and it is

**RECOMMENDED**, that if the court approves this recommendation, and plaintiffs file a proposed amended complaint, the proposed amended complaint be returned to me for further proceedings.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 10, 2016

.

Hon. Andrew T. Baxter
U.S. Magistrate Judge